UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| A. ARMEDA THOMAS,<br><br>    Plaintiff,<br><br>    v.<br><br>FARM BUREAU LIFE INSURANCE COMPANY D/B/A FARM BUREAU FINANCIAL SERVICES, a Foreign Corporation,<br><br>    Defendant. | Case No. 2:16-cv-01091-APG-NJK<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>(ECF No. 21) |

    Plaintiff A. Armeda Thomas sues defendant Farm Bureau Life Insurance (FBL) for breaching an annuity policy of which Mrs. Thomas is the beneficiary. Mrs. Thomas's late husband purchased the policy in 2012. When he died in 2014, FBL began paying Mrs. Thomas monthly payments. But Mrs. Thomas wants to receive the payments in one lump sum. She argues that both the policy and a 2014 agreement with FBL give her the right to withdraw the total amount (subject to a penalty). FBL contends that Mrs. Thomas is limited to the monthly payments.

    Despite ambiguities in each contract, a holistic reading of each shows an unmistakable intent to provide Mrs. Thomas monthly payments without the right to withdraw beyond that. Mrs. Thomas's preferred reading of the ambiguous terms is not plausible, especially where it would render clear terms and intent meaningless. I therefore grant FBL's motion to dismiss.

**BACKGROUND**

    Blaine Thomas, a Kansas resident, entered into an annuity policy with FBL on January 27, 2012. ECF No. 15-5 at 2. Blaine Thomas is listed as both the Owner and the Annuitant of the policy. *Id.* at 8. Under the policy, the Owner is "entitled to exercise all rights and privileges provided in the policy." *Id.* at 10. The Annuitant is "the person whose life determines the

annuity benefit [and] Death Benefit . . . . Only one Annuitant may be named." *Id.*  Policy section 6.6 ("Cash Surrender") says, "Before the Retirement Date and while the Annuitant lives, the Owner may surrender this policy for its surrender value." *Id.* at 14.

    Policy section 2.7 ("Termination") says, "This policy ends when any one of the following events occurs: a. the Owner requests that the policy be canceled; b. the Annuitant dies . . . ." *Id.* at 12.  Section 7.1 states that "[t]he Owner may choose to have the proceeds of this policy paid under a payment option.  After the death of an Annuitant who is an Owner, the Beneficiary may choose an option if the Owner had not done so before the Annuitant's death." *Id.* at 14.  The Beneficiary is defined as "the person (or persons) named by [the Owner] to whom the Death Benefit payable on the death of the Annuitant . . . will be paid." *Id.* at 10.  Mr. Thomas's January 27 application lists his children as the Beneficiaries, but a note next to that section says "(See Settlement Attached)." *Id.* at 20.

    On January 31, 2012, Mr. Thomas and an FBL representative executed "Directions for Settlement" regarding the annuity. ECF No. 15-6.  In that document, Mr. Thomas "revoke[d] all previous Beneficiary designations on said Policy and direct[ed] that the net proceeds of said Policy payable as a result of the death of the Insured shall be" paid to Mrs. Thomas as the Beneficiary. *Id.* at 2.  Mr. Thomas chose to have the proceeds paid as a "Fixed Amount Income" of $7,000 per month. *Id.*  Mr. Thomas did not check the box on the next line that offered the "[p]rivilege to commute and accept in one sum." *Id.*

    Mr. Thomas passed away on January 3, 2014.  On August 24, 2014, Mrs. Thomas and an FBL representative executed a document entitled Payment Option Agreement (the "2014 Agreement"). ECF No. 15-8.  The introductory "Data Page" says, "[t]he policy named below has been surrendered or matured by reason of the death or survival of the annuitant.  [FBL] agrees to

retain the proceeds which are now payable and apply such proceeds in the manner described in this agreement." *Id.* at 3. The agreement appears to be styled as a new annuity and it states that it replaces Mr. Thomas's policy. *Id.* Mrs. Thomas is listed as the "Annuitant" and the "Primary Payee," the "Purchase Amount" is $631,729.33, and it calls for a Guaranteed Payment Amount of $7,000 to be paid monthly. *Id.* Section III of the Data Page ("Method of Payment") confirms the "proceeds will be paid out in equal installments of $7000.00. This amount will continue until all proceeds plus interest have been paid out." The agreement also specifies that Mrs. Thomas is "[w]ithout the right to withdraw at any time" and "[w]ithout the right to change options at any time." *Id.*

**ANALYSIS**

  I.  **Mrs. Thomas's Withdrawal Rights Under the 2012 Annuity Contract Executed by Blaine Thomas and FBL**

  Mrs. Thomas points to an ambiguous clause in the 2012 policy to suggest that she has the right to "continue" the policy, and therefore the right to exercise the withdrawal rights that her husband had under the contract. FBL contends that this interpretation is inconsistent with the clear intent of the parties as shown by a holistic reading of the contract.

  Nevada courts follow the Restatement (Second) of Conflict of Laws (1971), Section 192 of which reads, the "validity of a life insurance contract issued to the insured . . . and the rights created thereby are determined . . . by the local law of the state where the insured was domiciled at the time the policy was applied for." Mr. Thomas was a resident of Kansas when he applied for the annuity so Kansas law applies.

  "The primary rule for interpreting written contracts is to ascertain the parties' intent." *Iron Mound, LLC v. Nueterra Healthcare Mgmt., LLC*, 313 P.3d 808, 812 (Kan. 2013). "All pertinent provisions of an insurance policy must be considered together, rather than in isolation,

and given effect." *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 71 P.3d 1097, 1120 (Kan. 2003). "An ambiguity in the language of the contract will be strictly construed against the party who drafted the provision." *Shelter Mut. Ins. Co. v. Williams*, 804 P.2d 1374, 1379 (Kan. 1991). "Whether an instrument is ambiguous is a matter of law to be decided by the court." *Simon v. Nat'l Farmers Org., Inc.*, 829 P.2d 884, 888 (Kan. 1992).

    The 2012 contract, read in its entirety, makes clear Blaine Thomas's intent to direct payments of $7,000 per month to Mrs. Thomas without giving her the option to accept a lump sum. As the only "Owner," Mr. Thomas had the prerogative to elect what payment option would be used to distribute the policy proceeds "[a]fter the death of an Annuitant who is an Owner" (as was the case here). In the Directions for Settlement, Mr. Thomas listed Mrs. Thomas as the Beneficiary and he chose "Payment Option D," electing fixed income to Mrs. Thomas of $7,000 monthly. He did not check the box that would have granted Mrs. Thomas the "[p]rivilege to commute and accept in one sum."

    To overcome this, Mrs. Thomas must offer other provisions that can be reasonably construed to show either that her husband actually intended to allow her the right to withdraw additional sums or that Mrs. Thomas has the power to change her husband's elections. She points to section 5.2, which is admittedly ambiguous. It says that if the Owner dies, and "if . . . the Owner's spouse is a surviving Beneficiary . . . the policy may be continued to the extent of such spouse's interest in the policy." ECF No. 15-5 at 13, § 5.2. Mrs. Thomas argues this means the spouse can step into the shoes of the Owner and therefore has any withdrawal rights the Owner had. FBL does not offer an explanation of the provision, but says the plaintiff's interpretation of a vague clause cannot trump other clear, contradictory provisions.

Despite the rule that ambiguities must be construed against the drafting party, Mrs. Thomas's interpretation is not a plausible construction of the ambiguity.  Section 5.2 says the policy may be continued "to the extent of such spouse's interest in the policy."  Mrs. Thomas's interest is that of a Beneficiary.  She does not satisfactorily explain how Section 5.2 converts a Beneficiary interest into an Owner interest.  Mrs. Thomas's reading is in direct conflict with the qualifying language "to the extent of," which limits the surviving spouse's rights.  Her preferred interpretation would also render inoperative Mr. Thomas's expressed intent in the Directions for Settlement, which violates the primary rule for interpreting written contracts.  Indeed, it would muddle entirely the distinction between Owner and Beneficiary, converting all the Owner's expressed directions into non-binding suggestions.  I cannot approve this interpretation.

II.     **Mrs. Thomas's Withdrawal Rights Under the 2014 Payment Option Agreement Executed by Mrs. Thomas and FBL**

Mrs. Thomas next contends an ambiguous clause in the 2014 Agreement gives her the withdrawal rights offered to an Owner in the 2012 policy.  FBL again argues that this interpretation is inconsistent with a holistic reading of the contract, and that it is implausible even read in isolation.

The 2014 Agreement, read as a whole, does not give Mrs. Thomas a right to withdraw amounts above the prescribed monthly payment.  The Data Page states that proceeds will be paid in equal installments of $7,000 until all proceeds are paid out.  It also says the primary payee (Mrs. Thomas) is "without the right to withdraw at any time" and "without the right to change options at any time."  The 2014 Agreement does not mirror the provision in the 2012 policy that affirmatively states that "the Owner may surrender this policy for its surrender value."  Instead, the 2014 Agreement's provisions on "Full Withdrawal" and "Partial Withdrawal" provide only

that "You may surrender this agreement if: withdrawals are permitted under the option shown on the [Policy] Data Pages. . . ."[1] ECF No. 16-1 at 19.

The "Full Withdrawal" clause introduces a possible ambiguity by saying, "You may surrender this agreement if withdrawals are permitted under the option shown on the Policy Data Page." The 2014 Agreement contains only a "Data Page." The 2012 policy has a page entitled "Policy Data," which is referred to elsewhere in the 2012 policy as the "Policy Data page." Mrs. Thomas therefore argues that the ambiguity, construed against the drafter, means the "Full Withdrawal" clause refers back to the 2012 policy's "Surrender Charge" table (ECF No. 15-5 at 9, 11), and that the existence of such a table implies withdrawals are permitted. FBL says that addition of the word "Policy" before "Data Page" in the 2014 Agreement is a typographical error, and that both the "Full Withdrawal" and "Partial Withdrawal" clauses refer to the 2014 Agreement's Data Page.

Mrs. Thomas's preferred interpretation is not plausible with a holistic reading of the Agreement. The 2014 Agreement opens by announcing that it "replaces" the 2012 policy. All terms and references (besides the contested one) are internal to the document. None points to the 2012 policy. It stretches credulity to argue a fleeting reference to a "Policy Data Page" (as opposed to "Data Page") intends to refer back to the 2012 policy, given no further discussion or clarity. That construction also would nullify the clear provision disallowing withdrawals. Even if the "Full Withdrawal" clause of the 2014 Agreement clearly referred to the "Policy Data" page of the 2012 policy, that page does not address whether "withdrawals are permitted," who has the right to withdraw, and what conditions are placed on withdrawal. Instead, it simply lays out a schedule of surrender charges for withdrawal. By contrast, the Data Page of the 2014 Agreement clearly addresses withdrawal rights, stating they are not allowed. These two issues each, by themselves, put Mrs. Thomas's interpretation in serious doubt. Combined, they require too

---

[1] The "Full Withdrawal" provision uses the term "Policy Data Pages," whereas the "Partial Withdrawal" provision uses "Data Pages," an inconsistency discussed below.

much of an inferential leap to be plausible.  The clear intent expressed in the 2012 policy and the 2014 Agreement must outweigh this implausible construction.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendant's motion to dismiss **(ECF No. 21) is GRANTED**.  Mrs. Thomas is granted leave to amend the complaint to cure the defects in her claim if sufficient facts exist.  Mrs. Thomas must file the amended complaint within 21 days of entry of this order.

DATED this 5th day of December, 2016.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE